### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **LATANYA PETEET,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO. 1:11-cv-431-WTL-MJD** |
| | ) | |
| **AMERITECH SERVICES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### ENTRY ON MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on Defendant's motion for summary judgment.  The motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion for the reasons set forth below.

### I.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor.  *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.").  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Id.*  Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court

is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. FACTUAL BACKGROUND

The relevant facts of record, viewed in the light most favorable to Plaintiff, the non-moving party, are as follow.

Defendant, Ameritech Services (the "Company"), hired Plaintiff, LaTanya Peteet ("Peteet"), on May 10, 1999 as a Service Representative in its Consumer Centers Sales & Service organization ("Consumer"). Throughout her employment with Defendant, Peteet was a member of the Communications Workers of America Local 4900 ("CWA"), and her employment was governed by the terms and conditions of a collective bargaining agreement ("CBA") between the Company and the CWA.

As a Service Representative in Consumer, Peteet responded to inbound customer calls, assisted with specific problems and questions, and attempted to sell additional products including call waiting, caller identification, voice mail, telephone sets and pagers. On June 3, 2001, Peteet applied for and received a position as a Service Representative in Defendant's Industry Markets organization ("Industry Markets"). In Industry Markets, Peteet received and wrote line-release job orders for customers who wanted to transfer their service to other carriers. In the summer of 2005, the Company announced a surplus in Industry Markets and the need to reduce the organization's headcount by thirty individuals. The selection of the thirty surplus individuals was based upon seniority.

The CBA between the Company and the CWA governs the process of an employee surplus. Defendant's staffing department administers the surplus process and placement of

surplus employees in accordance with the CBA.  Employees who are the subjects of a surplus have multiple options.  Surplus employees may voluntarily elect to leave the service of the Company in exchange for a monetary payout.  Surplus employees may instead elect to submit a Surplus Transfer Request.  Such a request allows a surplus employee the opportunity to receive consideration for available non-management positions, including priority consideration for certain qualified lateral and downgrade placements, depending on location.  Surplus employees may also be eligible for upgrade positions if they self-nominate for the position and have qualifications for the job that are substantially equal to those of other candidates.  A surplus employee has ninety days from the notification of her surplus to accept severance or be placed in another position through a Surplus Transfer Request.  If the surplus employee declines a job offer through their Surplus Transfer Request, within their relevant  geographic location, her employment with the Company would end.

In order to receive a job offer for an open position, the Surplus Transfer Request applicant must meet all of the applicable qualifications for the position to be considered for possible placement.  Staffing profiles are compiled for each employee that show the employee's employment history with Defendant, general qualifications, skills, licenses, and test information. To facilitate the placement of surplus employees, the Defendant's staffing department looks back at the past five years of each surplus employee's work history and experience.  Based upon the information gained in the look-back, surplus employees are considered to be qualified to perform jobs that they were qualified to perform during the look-back period.  If surplus candidates are qualified for a position based upon work experience, they are exempt from qualification tests normally required for the position, and those tests are automatically added to their staffing

3

profiles.  In order to make surplus employees more internally marketable, the Company offers

them the opportunity to take tests that they have not previously passed or from which they have

not been exempted.

The Company notified Peteet in June 2005 that she was included in the group of

Industry Markets surplus individuals.  The Company met with the surplus group and outlined the

surplus process.  On June 17, 2005, Peteet submitted her Surplus Transfer Request noting her

desire for open lateral positions in her geographical area and an extended geographical area.  The

Company offered the surplus employees the opportunity to take the Employment Inventory test

(the "EI Test") in order to increase the surplus employees' likelihood of obtaining open

positions.  Peteet was notified that her past work experience qualified her for the EI Test.

On March 8, 2006, Peteet accepted a position as a Service Representative in

Defendant's Indianapolis Winback Organization ("Winback").  Peteet's job duties included

issuing orders in an attempt to bring business customers back to Defendant.  Peteet was not

required to take any additional tests for her position in Winback.  On March 23, 2006, Peteet

began working in her new position.

On September 29, 2006, Peteet filed an EEOC charge alleging that her manager in

Winback discriminated against her on the basis of her race by providing her with improper

training and erroneously placing her on a performance improvement plan.  The EEOC dismissed

Peteet's charge, informing her that she had ninety days to file a lawsuit.  Peteet did not file a

lawsuit based upon her September 2006 EEOC charge.  On December 1, 2006, Peteet filed a

second EEOC charge.  Again, Peteet alleged that her Winback manager discriminated against her

on the basis of her race by erroneously placed her on a performance improvement plan after

providing her with improper training.  The EEOC dismissed the charge, informing Peteet that she had ninety days in which to file a lawsuit.  Peteet did not file a lawsuit based upon the December 1, 2006, EEOC charge.  Peteet states that she did not discuss her September 2006 or December 2006 charges with any of Defendant's managers.

In February 2008, a surplus was announced for all of the Service Representatives in Winback, including Peteet.  On February 19, 2008, Peteet submitted her Surplus Transfer Request, requesting consideration for open positions, laterals, and upgrades in her geographical area and in an extended geographical area.  Shortly after submitting her Surplus Transfer Request, Peteet complained about the EI test being on her staffing profile.  The Company explained to Peteet that "while you may not have taken a specific test, you can be considered qualified if you currently hold that position based on the fact that you are currently performing the job and/or you previously performed the job."  Peteet Dep. Ex. 28 at 2.

On April 28, 2008, Peteet was offered a surplus placement as a Service Representative in Consumer.  Kelli Worley ("Worley"), a Staffing Manager, administered the matching and placement of Peteet with the available position in Consumer based upon her qualifications and prior work experience.  Peteet never spoke with or met Worley.  At the time of Peteet's 2008 placement in Cosumer, Worley did not know of Peteet's 2006 EEOC charges.  On April 29, 2008, Peteet accepted the position in Consumer.

Peteet's job duties as a Service Representative in Consumer consisted of working a call center environment, responding to inbound customer telephone calls, and assisting with specific problems or questions.  Additionally, she sold Defendant's products and services during

5

calls, including call waiting, caller identification, three-way calling, call forwarding, cellular service, DSL service, and DIRECTV service.

Peteet continued to complain that the EI Test was erroneously included on her staffing profile after she accepted the Consumer position in April 2008.  Peteet sought assistance from the CWA in getting the EI Test removed from her staffing profile.  Ron Honse, CWA Staff Representative, assured Peteet that the EI Test was properly on her staffing profile and that her placement in Consumer was proper.  In June 2008, Peteet filed a grievance with the CWA alleging that the EI Test should not have been on her staffing profile and she should not have been placed into Consumer.  On June 24, 2008, the Company denied Peteet's grievance.  The CWA decided not to arbitrate Peteet's grievance, explaining that it was its "opinion that an arbitrator would find that no contract violation had taken place and would deny the immediate grievance."  Peteet Dep. Ex. 44.  On February 10, 2009, Peteet appealed the CWA's decision not to arbitrate her grievance to Seth Rosen, CWA Vice President.  The Union upheld its prior decision.  On May 21, 2009, Peteet requested that Lawrence Cohen, CWA President, review the Union's decision not to arbitrate Peteet's grievance.  On October 1, 2009, the CWA upheld its decision.  Peteet made a final appeal to the CWA Executive Review Board that was denied on June 10, 2010.

On April 14, 2010, Peteet filed a grievance with the Union in which she alleged that the Call Center Audition – Test 3355 (the "CCA Test") was incorrectly added to her staffing profile in April 2010.  Peteet requested that the Company remove the test from her staffing profile.  The CCA Test assesses a Service Representative's ability to use a computer, follow written instructions, speak clearly, listen to customer information, and enter data accurately.

During the test, candidates take on the role of a customer contact employee handling calls for a telecommunications company.  The candidate interacts with simulated customers using a computer workstation.  Defendant's computer-based system, known as the Job Opportunity Broadcasting System ("JOBS"), automatically updated Peteet's staffing profile to qualify her for the CCA Test because of her prior experience in a call center environment.  The addition of the CCA Test to Peteet's staffing profile did not prevent her from applying for or accepting any other job offered by Defendant.

The Company denied Peteet's April 2010 grievance.  The CWA denied Peteet's request to arbitrate her grievance explaining that the CCA Test was "added because of [Peteet's] current, and or, previous job assignment."  Peteet Dep. Ex. 55.  Peteet stated that the addition of the CCA Test to her profile had no impact on her placement in Consumer.  Further she stated that the addition of the CCA Test to her profile did not result in lost money or benefits, or impact her mental or emotional health.

On October 1, 2010, Peteet filed an EEOC charge alleging that the "entries made in [Peteet's] staffing profile inaccurately identified that [she] had been trained or was otherwise qualified for Call Center and Employment Inventory," Peteet Dep. Ex. 59, and prevented her from obtaining a position as a Telecommunications Specialist in July 2010.  She futher asserted that those entries were made in her staffing profile in retaliation for her 2006 EEOC charges.  Peteet pointed to Kevin Shaw ("Shaw") and Candice Pope ("Pope") as the individuals involved in the alleged retaliatory changes to her staffing profile.  Shaw and Pope are staffing managers who administer the surplus process.  On December 30, 2010, the EEOC dismissed Peteet's EEOC Charge, and on March 29, 2011, Peteet initiated this lawsuit.

## III. __DISCUSSION__

Peteet alleges that the Company failed to promote her to the position of Telecommunications Specialist because the Company erroneously included the EI Test and the CCA Test on her staffing profile. Peteet asserts that the Company included these tests on her staffing profile in retaliation for the EEOC charges she filed in 2006 in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

An employee bringing a claim against his or her employer alleging retaliation under Title VII may do so using either the direct or indirect method of proof. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 508 (7th Cir. 2004). Peteet has elected to proceed under the indirect, burden-shifting method of proof. Under the indirect method of proof, Peteet must "show that after filing the charge only [s]he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though [s]he was performing her job in a satisfactory manner." *Stone v. City of Indianapolis, Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). "If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment." *Id.*

Peteet's briefing does not make clear which specific employment actions that she alleges were adverse. It appears as though Peteet contends that the inclusion of the EI and CCA Tests on her staffing profile are the actions that fulfill the adverse employment action requirement of the indirect method of proof. Specifically, Peteet argues that she, "has, in fact, suffered adverse employment action to the extent that she was prevented from applying for certain job opportunities when Defendant violated its own policies and procedures." Pl.'s Resp. at 13. Peteet's EEOC charge specifically mentioned both the EI Test and the CCA Test.

8

Therefore, the Court will consider whether the inclusion of either of those tests on Peteet's staffing profile is materially adverse.

The Supreme Court states that to fulfill the adverse employment action prong of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in [the context of the anti-retaliation provisions of Title VII] means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted). The Seventh Circuit's approach to determining whether an employment action is materially adverse is a "flexible, practical" one and has "emphasized that an adverse employment action need not be quantifiable in terms of pay or benefits." *Atanus v. Perry*, 520 F.3d 662, 677 (7th Cir. 2008).   However, "not everything that makes an employee unhappy is an actionable adverse action."  *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996).

Although Peteet appears to argue that the inclusion of the EI Test and the CCA Test on her staffing profile prevented her from applying for the position of Telecommunications Specialist, she has not provided the Court with any evidence supporting her allegation.  Indeed, the only evidence that Peteet provides to support her allegation that the inclusion of the tests on her staffing is materially adverse is a conclusory statement in the affidavit of Keturah White ("White") that Peteet's exemption from taking the tests "negatively impacted [Peteet's] job opportunities with [the Company]."  This conflicts with Peteet's admission in a deposition that the addition of the CCA Test to her staffing profile had no impact on her.  "As a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit

9

whose conclusions contradict prior deposition or other sworn testimony." *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1055 (7th Cir. 2000).  Furthermore, Peteet does not identify how the Company prevented her from applying for other positions; what tests prevented her from applying for other positions; and when, specifically, she was prevented from applying for other positions.  Therefore, the Court must conclude that there is no triable question of fact as to whether Peteet was subjected to an adverse employment action and that the Company is entitled to summary judgment on Peteet's claim.  *See Lucas v. Chi. Trans. Auth.*, 367 F.3d 714, 726 (7th Cir. 2004) (stating that "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts").

## IV.  CONCLUSION

For the reasons set forth above, the Company's motion for summary judgment is **GRANTED**.

SO ORDERED:  08/16/2012

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification